AWERKAMP & BONILLA, PLC
6891 N. Oracle Rd., Suite 155
Tucson, AZ 85704-4287
(520) 798-5282

Don Awerkamp (SBN 007572)
da@abdilaw.com
Ivelisse Bonilla, SBn 023594
ib@abdilaw.com
Shannon Giles (SBN 018786)
sg@abdilaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Imelda Cuyugan,<br><br>               Plaintiff,<br><br>     vs.<br><br>Pima Community College District, Lee<br>Lambert, in his personal capacity,<br><br>               Defendants. | No.<br><br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

For her Complaint, Plaintiff, Imelda Cuyugan, alleges as follows:

### **NATURE OF THE CASE**

1.     Plaintiff seeks damages arising from breach of contract, violation of her due process rights under 42 U.S.C. § 1983, employment discrimination on the basis of gender, and retaliation for having opposed discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991.

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the Federal claims in this action pursuant to 28 U.S.C. §§ 1331 and 1343, because the claims arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

2.      This Court has supplemental jurisdiction over all related claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b) because all of the events giving rise to Plaintiff's claims occurred in this District, specifically in Pima County.

4.      On September 9, 2014, Ms. Cuyugan's counsel filed a timely Notice of Claim pursuant to A.R.S. § 12-821.01.

5.      Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 10, 2014, alleging discrimination on the basis of gender and retaliation for engaging in a protected activity.

6.      On December 16, 2014, Ms. Cuyugan requested that the EEOC issue her Notice of Right to Sue.

7.      On June 12, 2015, the EEOC issued Ms. Cuyugan a Notice of Right to Sue.

## PARTIES

8.      Plaintiff, Imelda Cuyugan, is, and at all relevant times has been, a resident of Pima County, Arizona.

9.      Ms. Cuyugan is female.

10.      Defendant, PCC, employed Ms. Cuyugan in Pima County and has more than 15 employees affecting commerce so as to be an "employer" within the meaning of Title VII.

11.      Lee Lambert is the Chancellor of PCC and is being sued in his personal capacity for, under color of state law, depriving Ms. Cuyugan of her constitutional right to due process.

### STATEMENT OF FACTS

12.     PCC is a college serving the greater Tucson metropolitan area.

13.     PCC hired Ms. Cuyugan on March 7, 2005, as the Director of Grants.

14.     Ms. Cuyugan was successful in bringing in $26 million in grants for PCC and was promoted several times.

15.     In July of 2010, Ms. Cuyugan was promoted to the position of Assistant Vice Chancellor for Government Relations.

16.     In 2007 and 2011, Ms. Cuyugan was subjected to unlawful sexual harassment by the Chancellor at the time, Roy Flores.

17.     On or about August 14, 2007, on a business trip, Mr. Flores made sexual advances toward Ms. Cuyugan.  When she refused, Chancellor Flores asked her not to tell anyone.

18.     After she refused Chancellor Flores's advances, Ms. Cuyugan's office was relocated and she was demoted.

19.     On or about July 8, 2011, Ms. Cuyugan was again required to go on a business trip with Chancellor Flores, and he, again, made unwelcome, unlawful sexual advances toward Ms. Cuyugan.

20.     After Ms. Cuyugan again refused Chancellor Flores's sexual advances, she was denied the opportunity for a promotion, which was given to a less-qualified male with less experience.

21.     On or about April 30, 2011, Ms. Cuyugan filed a Charge of Discrimination, Charge No. 540-2012-01934, with the EEOC alleging gender discrimination and retaliation for objecting to Chancellor Flores's advances.

22.     After Ms. Cuyugan filed her charge in 2011, her work environment became so hostile that she had to transfer to a staff classification position within PCC as Campus

Director of Administrative Services for the Northwest Campus, which position was three levels lower than the Assistant Vice Chancellor administrator position.

23.     On October 1, 2012, Ms. Cuyugan reached a settlement agreement with PCC. As part of that agreement, she was placed back in the position of Assistant Vice Chancellor for State Government Relations, among other consideration.

24.     As part of an EEOC Mediation Agreement, PCC agreed not to retaliate against Ms. Cuyugan for filing Charge No. 540-2012-01934.

25.     Shortly after being returned to the Assistant Vice Chancellor position, Ms. Cuyugan was accused of violating the agreement.

26.     At her first meeting with the new Chancellor, Lee Lambert, on August 16, 2013, Chancellor Lambert was adversarial with Ms. Cuyugan, and accused her of being a problem.

27.     On August 22, 2013, Ms. Cuyugan complained to Board Member Sylvia Lee about Chancellor Lambert's treatment of her.

28.     Ms. Cuyugan was rated as performing an excellent job in her position as Assistant Vice Chancellor for State Governmental Relations.

29.     In Ms. Cuyugan's performance evaluation, Ms. Cuyugan's supervisor, Zelema Harris, agreed that Ms. Cuyugan was doing an excellent job.

30.     PCC policy in June of 2014, Section II (D)(1) of PCC's Administrative Personnel Policy Statement FY 2013/2014 states the following:

**Offer of New Contract**

> An administrator and/or executive administrator (other than the position of Chancellor) will be offered a new contract for the ensuing fiscal year unless he/she is otherwise notified in writing on or before February 15.

31.     Ms. Cuyugan did not receive notice in writing or verbally that her contract for academic year 2014-2015 would not be renewed prior to February 15, 2014.

32.     On March 12, 2014, the Board of Governors approved the renewal of Ms. Cuyugan's employment contract for academic year 2014-2015.

33.     Notwithstanding Ms. Cuyugan's superior performance, and the Board's renewal of her contract until June 2015, on June 13, 2014, Provost Harris notified Ms. Cuyugan that her contract for academic year 2014/2015 would not be renewed.

34.     Ms. Cuyugan was not given notice and an opportunity to be heard on the issue of the termination of her contract for academic year 2014/2015.

35.     On June 20, 2014, four months past the required notification date, Chancellor Lambert notified Ms. Cuyugan that her position was being eliminated, that he was going to offer her a three-month contract beginning July 1, 2014, and that she could compete for open positions.

36.     Ms. Cuyugan had an approved employment contract until June 30, 2015 and Chancellor Lambert terminated Ms. Cuyugan's employment contract without giving her notice and an opportunity to be heard.

37.     On July 2, 2014, Chancellor Lambert directed Ms. Cuyugan to report in person to his assistant every day at 8:00 a.m. for the remainder of her contract.

38.     Chancellor Lambert did not require others similarly situated employees in his Cabinet to report personally to his assistant every day at 8:00am.

39.     Chancellor Lambert decided to contract outside lobbyists to do the job Ms. Cuyugan had been doing and eliminated the department she headed.

40.     Chancellor Lambert, however, retained the only male employee in Ms. Cuyugan's department.

41.     Chancellor Lambert eliminated other positions, such as the positions of C.J. Karamargin and Rachelle Howell, but these individuals were offered a one-year contract and were reassigned without having to compete or apply for other positions.  These individuals also retained their salary.

42.     Upon information and belief, the decision to terminate Ms. Cuyugan's employment was made by Chancellor Lee Lambert.

43.     Prior to terminating Ms. Cuyugan's contract until June of 2015, Chancellor Lambert did not give Ms. Cuyugan notice and an opportunity to be heard.

44.     Chancellor Lee Lambert deprived Ms. Cuyugan of her constitutional right to continued employment without due process.

45.     PCC and Chancellor Lee Lambert have engaged and continue engaging in the pattern and practice of terminating employees before the end of their contracts without giving them notice and an opportunity to be heard, and before deciding to deprive the employees of their property interest in their employment.

46.     The termination of Ms. Cuyugan by PCC and Chancellor Lambert before the end of her contract year and the deprivation of her constitutional right to due process was done recklessly and/or callously indifferently to her federally protected rights.

47.     Ms. Cuyugan was terminated because of her gender, female, and in retaliation for engaging in a protected activity.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

48.     Ms. Cuyugan had a contract for employment with PCC through June of 2015 approved by the PCC Board of Governors.

49.     Ms. Cuyugan had a contract and property right to be employed by PCC through at least June of 2015.

50.     PCC terminated Ms. Cuyugan before the end of her contract without giving her notice and the right to be heard.

51.     PCC's termination of Ms. Cuyugan before the end of her contract constitutes a breach of the contract.

52.     Ms. Cuyugan has suffered damages as a result of PCC's breach of her contract.

53.     Because this matter arises out of a contract, Ms. Cuyugan is entitled to an award of attorneys' fees pursuant to A.R.S. § 12-341.01

**SECOND CAUSE OF ACTION**

**(Violation of Due Process Under 42 U.S.C. § 1983)**

54.     Ms. Cuyugan had an expectation of continued employment through at least June of 2015.

55.     Ms. Cuyugan had a contract and property right to be employed by PCC through June of 2015.

56.     PCC and Chancellor Lambert terminated Ms. Cuyugan before the end of her contract without giving her notice and the right to be heard.

57.     PCC and Chancellor Lambert deprived Ms. Cuyugan deprived Ms. Cuyugan of her constitutional right to continued employment without due process.

58.     PCC and Chancellor Lee Lambert have engaged and continue engaging in the pattern and practice of terminating employees before the end of their contracts without giving them notice and an opportunity to be heard depriving the employees of their constitutional right to due process.

59.     The termination of Ms. Cuyugan by PCC and Chancellor Lambert before the end of her contract year and the deprivation of her constitutional right to due process was done recklessly and/or callously indifferently to her federally protected rights.

60.     The termination of Ms. Cuyugan by PCC and Chancellor Lambert before the end of her contract without notice and the opportunity for her to be heard is a violation of her due process rights pursuant to 42 U.S.C. § 1983.

61.     Ms. Cuyugan has suffered excessive damages, including punitive damages, as a result of PCC's violation of her due process rights.

**THIRD CAUSE OF ACTION**

**(Intentional Infliction of Emotional Distress)**

62.     PCC's and Chancellor Lambert's actions were extreme and outrageous and caused Ms. Cuyugan severe emotional distress.

63.     Ms. Cuyugan had to take short term disability because of the severe emotional distress she has suffered due to her termination.

64.     PCC and Chancellor Lambert intended to cause Ms. Cuyugan emotional distress or acted with reckless disregard of the near certainty that emotional distress would result from their conduct.

65.     As a proximate result of PCC's and Chancellor Lambert's actions, Ms. Cuyugan has suffered excessive damages.

**FOURTH CAUSE OF ACTION**

**(Discrimination and Retaliation in Violation of Title VII)**

66.     PCC terminated Ms. Cuyugan because of her gender, female, and in retaliation for engaging in a protective activity.

67.     PCC discriminated against Ms. Cuyugan because of her gender.

68.     PCC's termination of Ms. Cuyugan because of her gender and in retaliation for having opposed discrimination is a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

69.     As a direct result of the conduct of PCC, Ms. Cuyugan has suffered, and will continue to suffer, lost income, diminished earning capacity, emotional distress and punitive damages.

**REQUEST FOR JURY**

70.     Plaintiff requests a trial by jury to the fullest extent permitted by law.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff Imelda Cuyugan requests judgment against Defendant PCC awarding her the following:

    a.  Compensatory damages for breach of contract;

    b.  Compensatory damages for damage to professional reputation, lost income, diminished earning capacity, harm to reputation and emotional distress;

    c.  Punitive Damages;

    d.  Attorneys' fees and costs incurred in this lawsuit; and

    e.  Any other equitable relief this Court deems appropriate and just.

RESPECTFULLY SUBMITTED this 15th of June, 2015.

AWERKAMP & BONILLA, PLC

By /s/ Ivelisse Bonilla
Don Awerkamp
Ivelisse Bonilla
Shannon Giles
*Attorneys for Plaintiff*

-9-