Imelda Cuyugan v Pima Community College District, and Lee Lambert,
No. 4:15-CV-00260-RCC

**Plaintiff's Separate Statement of Facts in Support of Opposition to Defendant's Motion for Summary Judgement and Plaintiff's Response to Defendant's Statements of Facts.**

## INDEX

| Date | | Document |
|---|---|---|
| 9/15/2016 | Exhibit 1 | Affidavit of Imelda Cuyugan |
| 4/28/2016 | Exhibit 2 | Deposition of Lee Lambert |
| 4/19/2016 | Exhibit 3 | Deposition of Zelema Harris |
| 4/19/2016 | Exhibit 4 | Deposition of Michael Peel |
| 7/12/2016 | Exhibit 5 | Deposition of Rachelle Howell |
| | Exhibit 6 | Pima Community College Salary Look up information for Elizabeth Howell and Michael Peel |

# EXHIBIT 1
# Affidavit of Imelda Cuyugan

# AFFIDAVIT OF IMELDA CUYUGAN

STATE OF ARIZONA    )
                    ) ss
COUNTY OF PIMA      )

I, Imelda Cuyugan, having been duly sworn, upon my oath state of my own personal knowledge:

1. PCC hired me on March 7, 2005, as the Director of Grants.

2. I was successful in bringing in $26 million in grants for Pima Community College ("PCC") and was promoted several times.

3. In February of 2007, I was promoted to the position of Assistant Vice Chancellor for External Relations.

4. In 2007 and 2011, I was subjected to unlawful sexual harassment by the Chancellor at the time, Roy Flores.

5. On or about August 14, 2007, on a business trip, Mr. Flores made sexual advances toward me. When I refused, Chancellor Flores asked me not to tell anyone.

6. After I refused Chancellor Flores's advances, my office was relocated and I was demoted.

7. On or about July 8, 2011, I was again required to go on a business trip with Chancellor Flores, and he, again, made unwelcome, unlawful sexual advances toward me.

8. After I again refused Chancellor Flores's sexual advances, I was denied the opportunity for a promotion and the position was given to C.J. Karamargian, a less-qualified male with no lobbying experience.

9. My work environment became so hostile that, in February of 2012, I had to transfer to a staff classification position within PCC as Campus Director of Administrative Services for the Northwest Campus, which position was three levels lower than the Assistant Vice Chancellor administrator position.

10. On or about April 30, 2012, I filed a Charge of Discrimination, Charge No. 540-2012-01934, with the EEOC alleging gender discrimination and retaliation for objecting to Chancellor Flores's advances.

11. On October 1, 2012, I reached a settlement agreement with PCC. As part of that agreement, I was placed in the position of Assistant Vice Chancellor for State Government Relations.

12. As part of an EEOC Mediation Agreement, PCC agreed not to retaliate against me for filing Charge No. 540-2012-01934.

13. In the first one-on-one meeting I had with Chancellor Lambert, on August 16, 2013, Chancellor Lambert was very adversarial and accused me of being a problem and not knowing my job.

14. Within five months of Chancellor Lambert becoming the Chancellor, I was notified that I would report to Dr. Harris, instead of reporting directly to Chancellor Lambert.

15. On August 22, 2013, I complained to Board Member Sylvia Lee about Chancellor Lambert's treatment of me.

16. In my performance evaluation, my supervisor, Dr. Zelema Harris, stated that I was performing my duties at a proficient and/or advanced level in my position.

17. I did not receive notice in writing or verbally that my contract for academic year 2014-2015 would not be renewed prior to February 15, 2014.

18. Since 2005, based on PCC's practice, I have known that if I did not receive notice by February 15 of non-renewal, my contract for the next fiscal year was renewed.

19. On June 13, 2014, I had a meeting with Dr. Harris during which she told me that my contract for 2014-2015 would not be renewed.

20. On June 20, 2014, four months past the required notification date, Chancellor Lambert notified me that my position was being eliminated, that he was going to offer me a three-month contract beginning July 1, 2014, and that I could compete for open positions.

21. As of this date, PCC has not produced or disclosed to me any document created by Dr. Harris providing recommendations to the Chancellor or anyone else regarding the reorganization, besides the organizational charts.

22. On July 2, 2014, Chancellor Lambert directed me to report in person to his assistant every day at 8:00 a.m. for the remainder of my contract without providing any explanation or reason.

23. At the time I was told my office was being eliminated, June 13, 2014, my office had three employees, myself, Pilita Stevens and Michael Peel.

24. The only employees that were terminated were myself and my assistant Pilita Stevens.

25. Michael Peel had been working for PCC for approximately three months and was on probation and I had been working for PCC for more than nine (9) years when the decision to retain Mr. Peel and terminate me was made.

26. Chancellor Lambert eliminated other positions, such as the positions of C.J. Karamargin and Rachelle Howell, but these individuals were offered a one-year contract and were reassigned without having to compete or apply for other positions. These individuals also retained their salary. Both individuals reported to Dr. Harris and C.J. Karamargin had a poor evaluation.

Date: September 15, 2016

_____
Imelda Cuyugan

SUBSCRIBED AND SWORN TO before me this 15th day of September, 2016, by Imelda Cuyugan.

_____
Notary Public

My Commission Expires: 4/24/2020

OFFICIAL SEAL
DAHLIA M. RAMPOLLA
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Comm. Expires April 24, 2020